**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF WEST VIRGINIA**
**at Martinsburg**

**RITCHIE MOORE,**

        **Plaintiff,**

**v.**

**SMITHAHN COMPANY, INC.,**
**a Pennsylvania corporation;**
**ESSROC CEMENT CORP.,**
**a Pennsylvania corporation; and**
**ITALCEMENTI HOLDINGS CORP.,**
**a Delaware corporation,**

        **Defendants.**

**CIVIL ACTION NO.** 3:13-cv-151 (Groh)

Electronically Filed October 24, 2013

## COMPLAINT

For his Complaint against the defendants, the plaintiff states and alleges as follows:

## PARTIES

1.      The plaintiff, Ritchie Moore, is a citizen of Shepardstown, Jefferson County, West Virginia.

2.      The defendant, Smithahn Company, Inc. ("Smithahn"), is a corporation organized and existing under the laws of Pennsylvania with its principal place of business in Bethlehem, Lehigh County, Pennsylvania and is primarily engaged in the welding, fabrication, erection, rigging, millwright and engineering services in connection with, among others, the quarry and mining industries.  As such, Smithahn, at all times relevant herein was, subject to the jurisdiction of the Occupational Health and Safety Administration ("OSHA"), the National Institute of Occupational Safety and Health ("NIOSH"), and was responsible for compliance with all applicable OSHA/NIOSH regulations, in addition to consensus safety standards in the erection, rigging, welding and millright industries.  In addition, for the subject work being performed on

property owned/operated and/or controlled by defendants Essroc Cement Corp. and Italcementi

Holdings Corp., the defendant Smithahn was also subject to the jurisdiction of the United States

Department of Labor Mine Safety and Health Administration ("MSHA") as well as the West

Virginia Offices of Miners Health, Safety & Training ("OMHST") and was responsible for

compliance with all applicable MSHA and OMHST rules and regulations while at the subject

limestone quarry, Mine ID Number 4600007 ("limestone quarry").

3.      The defendant, Essroc Cement Corp. ("Essroc"), is a corporation organized and

existing under the laws of Pennsylvania with its principal place of business in Nazareth,

Northampton County, Tennessee.  The defendant Essroc was authorized to do business in West

Virginia and served as the operator of the limestone quarry.  As such, the defendant is, and at all

times relevant herein was, subject to the jurisdiction of MSHA as well as OMHST and was

responsible for compliance with all applicable MSHA and OMHST rules and regulations in the

operation of the subject limestone quarry.

4.      The defendant, Italcementi Holdings Corp. ("Italcementi"), is a corporation

organized and existing under the laws of Delaware and was the controller of the limestone

quarry.  As such, the defendant is, and at all times relevant herein was, subject to the jurisdiction

of MSHA as well as OMHST and was responsible for compliance with all applicable MSHA and

OMHST rules and regulations in the operation of the subject limestone quarry.

## JURISDICTION AND VENUE

5.      Jurisdiction is appropriate in the United States District Court for the Northern

District of West Virginia pursuant to 28 U.S.C. §1332 inasmuch as this action involves citizens

of different States and the amount in controversy exceeds Seventy Five Thousand Dollars

($75,000.00).  Venue is appropriate in the United States District Court for the Northern District

2

of West Virginia, at Martinsburg, inasmuch as most material events occurred in Martinsburg, Berkeley County, West Virginia.

## **FACTS**

6.      On or about October 22, 2012, plaintiff was employed by Smithahn as a welder.

7.      Upon information and belief, Essroc and Italcementi were at all relevant times, responsible for the supervision, engineering, equipment purchases, safety and oversight of the subject limestone quarry and had a non-delegable duty to provide for a safe workplace at the same.

8.      On and before October 22, 2012, defendants exercised control over the plaintiff and his co-workers; the equipment used at the limestone quarry; and the safety of the limestone quarry.

9.      On and before October 22, 2012, defendant Smithahn required its workers to regularly operate a Caterpillar TH560B telehandler ("Cat telehandler").  The Cat telehandler employed a hydraulic system to power the telehandler's boom assembly and attachments.

10.      On or about October 22, 2012, defendant Smithahn assigned Brian Keller to operate the Cat telehandler for the purpose of loading dismantled pieces of a cooling station into a Sea-Can trailer for later transport.

11.      The defendants had a duty to safely and properly maintain, inspect, and repair the Cat telehandler and to ensure that the Cat telehandler and its parts and components were in safe operating condition.

12.      On and before October 22, 2012, defendants failed to adequately maintain, inspect and/or repair the Cat telehandler in that, among other things, the Cat telehandler contained a damaged hydraulic system and/or was otherwise in a state of dangerous disrepair thereby

3

exposing workers, including the plaintiff, to a high risk of serious injury or death when operating the Cat telehandler.

13.    On and before October 22, 2012, defendants knew that the Cat telehandler contained a hydraulic system that was continually unsafe for use, in a dangerous state of disrepair and/or otherwise failed.

14.    On and before October 22, 2012, defendants knew that during operation, the Cat telehandler's hydraulic system would not properly function and allow for tilting and movement of the Cat telehandler's boom attachments thereby exposing workers, including the plaintiff, to a high risk of serious injury or death when operating the Cat telehandler.

15.    On or about October 22, 2012, plaintiff's co-worker Brian Keller was in the process of loading pieces of steel into a Sea-Can container using the Cat telehandler boom and attachment.  Plaintiff Moore was situated inside the Sea-Can container.  In using the subject Cat telehandler with the damaged hydraulic system, the boom/attachment assembly was rendered dangerous and ineffective.  As Mr. Keller attempted to load the Sea-Can trailer with the steel pieces, a piece of steel fell out from between the boom attachment and the choker holding the same and violently fell onto the Plaintiff causing a left tibia fracture and other severe and permanent injuries.

16.    Before assigning the plaintiff and his co-workers the task of loading steel into the Sea-Can containers, defendants failed to comply with State and Federal statutes and regulations and commonly accepted industry practices including, but not limited to, (a) failure to provide the plaintiff and his co-workers with proper equipment including an operable hydraulic system on the subject Cat telehandler; (b) failure to provide the plaintiff and his co-workers with proper training on, among other things, the proper use/operation of the Cat telehandler; (c) failure to

perform a job safety analysis/pre-shift inspection and/or any other site specific inspection to identify and remedy possible workplace safety hazards associated with the inoperable Cat telehandler; (d) failure to take appropriate steps to protect the plaintiff from injury and to otherwise assure his safety when working in and around stored energy under the Cat telehandler; (e) failure to provide any supervision, assistance or oversight of the plaintiff's activities at the time of the injury; and (f) failure to have a qualified competent person on site during the plaintiff's dangerous work activities.

17.     Upon information and belief, as a direct and proximate result of actions, omissions and conduct of the defendants, on or about October 22, 2012, the plaintiff suffered severe and permanently disabling injuries and loss including the fracture of the left tibia and subsequent surgery and including the following damages:

      a.     extreme physical pain and suffering;

      b.     extreme mental anguish and suffering;

      c.     permanent physical impairment;

      d.     loss of wages and benefits;

      e.     loss of future earning capacity and benefits;

      f.     loss of capacity to enjoy life;

      g.     medical expenses past and future;

      h.     annoyance and inconvenience; and

      i.     severe and permanent scarring and disfigurement.

## COUNT I

## DELIBERATE INTENT – SMITHAHN

18.     The plaintiff repeats and incorporates by reference the allegations contained in

paragraphs 1 through 17 of this Complaint as if set forth herein verbatim.

19. On or about October 22, 2012, the defendant Smithahn violated *West Virginia Code Section 23-4-2(d)(2),* in that they intentionally required plaintiff to work in illegal and unsafe conditions as described above in violation of mandatory state and federal workplace safety regulations and mining regulations.

20. On or about October 22, 2012, the defendant Smithahn violated *West Virginia Code Section 23-4-2 (d) (2) (i),* in that it consciously, subjectively, and deliberately formed the intention to produce the specific result of the injuries suffered by the plaintiff.

21. On or about October 22, 2012, the defendant Smithahn violated *West Virginia Code Section 23-4-2 (d) (2) (ii),* in that:

> (A) A specific unsafe working condition existed in the plaintiff's work environment which presented a high degree of risk and a strong probability of serious injury or death;
>
> (B) The defendant Smithahn, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition;
>
> (C) That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the employer, as demonstrated by competent evidence of written standards or guidelines which reflect a consensus safety standard in the defendant's industry, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;
>
> (D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C), inclusive, the defendant Smithahn nevertheless intentionally thereafter exposed the plaintiff to the specific unsafe working condition; and

6

(E) The plaintiff suffered serious compensable injury as defined in section one, article four, chapter twenty-three of the West Virginia Code as a direct and proximate result of the specific unsafe working condition.

22.      As a direct and proximate result of the defendant Smithahn's actions and conduct on or about October 22, 2012, the plaintiff sustained the severe permanent injuries and damages described herein.

## COUNT II

## <u>UNSAFE WORKPLACE – ESSROC</u>

23.      The plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 22 of this Complaint as if set forth herein verbatim.

24.      At all times relevant, the defendant Essroc owned, leased, and or controlled the subject parcel of land including, and had the duty to control, the right of control, and/or exercised control over defendant Smithahn's operations and equipment, and as such, had the duty to provide the plaintiff and other employees of defendant Smithahn with a reasonably safe place to work, including the duty to ensure that all work activity was properly conducted and supervised and including the duty to ensure that all equipment was in proper working order and/or condition.

25.      For all reasons set forth above, the defendant Essroc negligently and carelessly failed to provide the plaintiff and other employees with a reasonably safe place to work.

26.      As a direct and proximate result of the defendant Essroc's actions and conduct on or about October 22, 2012, the plaintiff sustained the severe permanent injuries and damages described herein.

## COUNT III

## <u>UNSAFE WORKPLACE – ITALCEMENTI</u>

27.     The plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 26 of this Complaint as if set forth herein verbatim.

28.     At all times relevant, the defendant Italcementi owned, leased, and or controlled the subject parcel of land including, and had the duty to control, the right of control and/or exercised control over defendant Smithahn's operations and equipment, and as such, had the duty to provide the plaintiff and other employees of defendant Smithahn with a reasonably safe place to work, including the duty to ensure that all work activity was properly conducted and supervised and including the duty to ensure that all equipment was in proper working order and/or condition.

29.     For all reasons set forth above, the defendant Italcementi negligently and carelessly failed to provide the plaintiff and other employees with a reasonably safe place to work.

30.     As a direct and proximate result of the defendant Italcementi's actions and conduct on or about October 22, 2012, the plaintiff sustained the severe permanent injuries and damages described herein.

WHEREFORE, the plaintiff respectfully demands judgment for compensatory damages against the defendants, jointly and severally, in an amount to be determined by a jury, with additional amounts for costs, attorney fees, costs associated with the prosecution of this cause, pre-judgment and post-judgment interest to the full extent permitted under law, punitive damages and for any other relief the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

**RITCHIE MOORE**
By Counsel

*/s/  Dan R. Snuffer*
Brett J. Preston (*WVSB #5726*)
C. Benjamin Salango (*WVSB #7790*)
Dan R. Snuffer (*WVSB #9777*)
**PRESTON & SALANGO, P.L.L.C.**
108 ½ Capitol Street, Suite 300
Post Office Box 3084
Charleston, West Virginia  25331
Telephone: (304) 342-0512
brett@wvlawyer.com
dsnuffer@wvlawyer.com
bsalango@wvlawyer.com


and

Tim Carrico (*WVSB # 6771*)
**CARRICO LAW OFFICES, P.L.L.C.**
602 Virginia Street, East
Charleston, West Virginia 25301
Telephone: (304) 347-3800
tcarrico@carricolaw.com
*Counsel for Plaintiff*

9